UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

GILBERTO SILVA and ABIGAIL TORRES,

              Plaintiffs,            09 Civ. 8281

  -against-                                OPINION

BRIDGEBAR LLC and BEHROOZ HEDVAT,

              Defendants.

------------------------------------------X

A P P E A R A N C E S:

    Attorney for Plaintiffs

    MARK LUBELSKY & ASSOCIATES
    123 West 18th Street, 8th Floor
    New York, NY   10011
    By:  Mark L. Lubelsky, Esq.

    Attorney for Defendants

    CORITSIDIS & LAMBROS, PLLC
    46 Trinity Place, 4th Floor
    New York, NY   10006
    By:  Jeffrey A. Gangemi, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/4/11

**Sweet, D.J.**

The plaintiffs Gilberto Silva ("Silva") and Abigail Torres ("Torres") (collectively, the "Plaintiffs") have moved for a judgment of damages in the amount of $1,594,374.28 arising out of the default in answering of the defendants Bridgebar, LLC ("Bridgebar") and Behrooz Hedvat ("Hedvat") (collectively, the "Defendants"). The Defendants have moved to vacate their default. Based on the facts and conclusions set forth below, the Defendants' motion is granted, and the Plaintiffs' motion denied as a consequence.

As will become apparent from what follows, the parties have been in contention over their status for over three years. Bridgebar owns the building where Silva served as superintendent, Torres, his common-law wife, also claims as superintendent, and both are now holdover tenants. This is an employer-employee, landlord-tenant dispute marred by procedural difficulties.

**Prior Proceedings**

Silva ceased his services as superintendent at 500 Fort Washington Avenue (the "Building") early in 2008 under circumstances which are in dispute. Bridgebar commenced a proceeding in the Civil Court of the State of New York, Housing Part, and obtained on August 21, 2008 a judgment and warrant evicting Silva. The judgment was reopened and vacated on June 5, 2009 after a hearing, the court having determined that the Plaintiffs were entitled to remain in the Building as rent-stabilized tenants.

On April 5, 2008, Silva and Torres commenced discrimination actions against Bridgebar before the New York State Division of Human Rights. See <u>Abigail Torres v. Bridgebar LLC</u>, Case No. 10125696; <u>Gilberto Silva v. Bridgebar LLC</u>, Case No. 10125451. These actions were withdrawn by Plaintiffs after an answer was filed by Bridgebar. A complaint was also filed by Plaintiffs before the New York State Department of Labor, LS10 2008010484, which was terminated after certain payments were made by Bridgebar.

This action was commenced on September 30, 2009 by the filing of a complaint with four causes of action (1) violation of the Fair Labor Standards Act ("FLSA") (Cmplt. ¶¶ 32-39), (2) violation of the New York Labor Law (Cmplt. ¶¶ 40-46), (3)

discrimination under New York State Executive Law 291 and 296, et seq. (Cmplt. ¶¶ 47-54), and (4) discrimination under the New York City Administrative Code § 8-107, et seq. (Cmplt. ¶¶ 55-62).

On March 3, 2010, the action was dismissed, no service having been made. It was reopened on March 19, 2010 upon the submission of proof of service on Hedvat on November 16, 2009 and on Bridgebar on November 27, 2009.

On February 4, 2011, the Plaintiffs moved for default judgment. On February 16, 2011, the Defendants moved to vacate their default in answering. Oral argument for both motions was heard on March 30, 2011.

**The Motion to Vacate the Default is Granted and the Motion for Default Judgment is Denied**

In Todtman, Nachamie, Spizz & Johns, P.C. v. Ashraf, 241 F.R.D. 451 (2007), the Honorable Charles S. Haight delineated the factors to be considered with respect to setting aside a default under Federal Rule of Civil Procedure 55(c):

> Rule 55(c) provides that an entry of default may be set aside "for good cause shown." In assessing "good cause," courts must consider the following factors:

> "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993).... The court must weigh and balance each of the relevant factors in making its determination. See Id. at 97; Info. Sys. & Networks Corp. v. United States, 994 F.2d 792, 796 (Fed. Cir. 1993).
>
> Rule 55(c) determinations are left to the sound discretion of the district court. Enron, 10 F.3d at 95. However, there is a preference for resolving disputes on the merits, and doubts should generally be resolved in favor of the defaulting party. Id. at 96.

Ashraf, 241 F.R.D. at 453-54. The Court in Ashraf went on to discuss the willfulness prong of the Rule 55(c) standard:

> The Second Circuit has interpreted willfulness in the default judgment context "to refer to conduct that is more than merely negligent or careless." SEC v. McNulty, 137 F.3d 732, 738 (2d Cir. 1998). However, a default may be willful "where the conduct of counsel or the litigant was egregious and was not satisfactorily explained." Id. Thus, "[c]ourts have held the default to be willful when a defendant simply ignores a complaint without action." Brown v. DeFilippis, 695 F. Supp. 1528, 1530 (S.D.N.Y. 1988) (citing Marziliano v. Heckler, 728 F.2d 151 (2d Cir. 1984)).

Ashraf, 241 F.R.D. at 454. Turning to the prejudice prong, the Court held the following:

> In the default judgment context, the Second Circuit has held that "delay alone is not a sufficient basis for establishing prejudice." Davis v. Musler, 713 F.2d 907, 916 (2d Cir. 1983). "Rather, it must be

>    shown that delay will 'result in the loss of evidence,
>    create increased difficulties of discovery, or provide
>    greater opportunity for fraud and collusion.'" Id.
>    (quoting 10 C. Wright, A. Miller & M. Kane, Federal
>    Practice and Procedure: Civil, § 2699 at 536-37
>    (1983)).

Ashraf, 241 F.R.D. at 455. Finally, the Court further spelled out the meritorious defense prong of the Rule 55(c) standard.

>    To show a meritorious defense, "the defendant need not
>    establish his defense conclusively, but he must
>    present evidence of facts that, if proven at trial,
>    would constitute a complete defense." SEC v. McNulty,
>    137 F.3d 732, 740 (2d Cir. 1998) (citations and
>    quotations omitted).

Ashraf, 241 F.R.D. at 455.

Here, the most difficult prong is the determination relating to the willfulness of the default.

The Defendants have not contested service; therefore, it is established that the failure to answer existed for 14 months. The motion to vacate Defendants' default followed shortly after the Plaintiffs' motion for a default judgment. According to his affidavit, Hedvat is an experienced businessman in the garment industry and the managing member of Bridgebar, which acquired the Building as part of his program of investing

in real estate. This background supports a conclusion that the default was willful, given his conceded knowledge of lawyers and litigation.

However, Hedvat has recited a "regular stream of adversities," including litigation with Plaintiffs, real estate properties which have fallen into default, and foreclosures and bankruptcies. Hedvat has averred that his home mortgage is also in default and that these exigencies overwhelmed him during the relevant period. According to Hedvat, he focused on this litigation only when it was brought to his attention by counsel in connection with certain of the bankruptcy proceedings.

Given the outcome of the other proceedings brought by Plaintiffs, Hedvat has asserted that he confused this action with the other litigation in which he and the Plaintiffs were involved. While negligent, I conclude that the default was the result of Hedvat's difficult circumstances and confusion and was not willful.

While Plaintiffs will suffer some prejudice from the delay which will result from vacating the default, their prosecution of their claims has been less than diligent, and the prejudice is minimal.

The most significant consideration is that a meritorious defense has been asserted by Bridgebar. According to Hedvat, Torres never served as superintendent and was never hired in that capacity. It is also alleged that Silva, who was afflicted with prostate cancer early in 2008, sought to minimize his income in order to obtain his medical treatment by not cashing salary checks and then resigning and requesting that his salary be paid to Torres, who shared the superintendent's two-bedroom apartment with him. Thereafter, with Silva having submitted his resignation, Vorillas Management, the Property's management company, hired a replacement superintendent. Whether or not Silva is entitled to FLSA protection as a superintendent is also at issue.

It is also noted that Hedvat has denied personal liability, and no basis for a claim against him personally is asserted in this record.

Finally, given the damage claims asserted of over $1 million and the preference to have claims determined on the merits, the motion to open the default in answering is granted. That conclusion renders moot the Plaintiffs' motion for a default judgment.

## Conclusion

Upon the conclusions set forth above, the Defendants' motion to vacate the default in answering is granted, and the Plaintiffs' motion for default judgment is denied. The Defendants are granted leave to answer within 20 days.

It is so ordered.

**New York, NY**
~~July~~ , ~~2011~~
8-2-11

ROBERT W. SWEET
U.S.D.J.